JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

APPENDIX B

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ELWOOD MENEAR
MARJORIE MENEAR

(b) County of Residence of First Listed Plaintiff   LEBANON
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

U.S. AIRWAYS, INC.
TINA PERRY

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
JAMES K. BRENGLE, ESQUIRE
DUANE MORRIS LLP
ONE LIBERTY PLACE   215-979-1512
PHILADEHIA, PA 19103

Attorneys (If Known)
DAVID N. ZEEHANDELAAR, ESQUIRE
BLANK ROME LLP
ONE LOGAN SQUARE   215-569-5500
PHILADELPHIA, PA 19103

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgement | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405 (g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☑ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | FAA |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 Original Proceeding
- ☑ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

REMOVED PURSUANT TO 28 USC 1331 1441
AIRLINE SAFETY AND SECURITY INCIDENT/GRIEVANCE INVOLVING US AIRWAYS PILOT
(E.MENEAR) AT SECURITY CHECKPOINT AT PHILADELPHIA INTERNATIONAL AIRPORT

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE   CLARENCE NEWCOMER

DOCKET NUMBER   2:03CV3849

DATE   8|18|03

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

UNITED STATES DISTRICT COURT                      **APPENDIX A**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 10350 Jonestown Road, Annville, PA 17003

Address of Defendant: 2345 Crystal Drive, Arlington, VA 22227

Place of Accident, Incident or Transaction: Terminal B, Security Checkpoint, Philadelphia
International Airport
*(Use Reverse Side For Addtional Space)*

Does this case involve multidistrict litigation possibilities?          Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: 2:03CV3849     Judge Clarence Newcomer     Date Terminated: ACTIVE

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes ☒   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes ☐   No ☐

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    *(Please specify)* Federal Aviation Act/Airline Deregulation Act and
    Railway Labor Act

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    *(Please specify)*

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*

I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _____     _____     _____
                                    Attorney-at-Law                    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____     RELATED AS NOTED ABOVE _____     56219
                                                    Attorney-at-Law                    Attorney I.D.#

CIV. 609 (9/99)                              ELAINE D. SOLOMON, ESQUIRE

**IN THE UNITED STATES DISTRICT COURT**     APPENDIX C
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

ELWOOD MENEAR and MARJORIE MENEAR     :     CIVIL ACTION
                         v.     :
U.S. AIRWAYS, INC and TINA PERRY     :     NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)  Habeas Corpus -- Cases brought under 28 U.S.C. §2241 through §2255.     ( )

(b)  Social Security -- Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.     ( )

(c)  Arbitration -- Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d)  Asbestos -- Cases involving claims for personal injury or property damage from exposure to asbestos.     ( )

(e)  Special Management -- Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)     ( )

(f)  Standard Management -- Cases that do not fall into any one of the other tracks.     (XX)

8\18\3
**Date**

_____
**Attorney-at-law** Elaine D. Solomon

_____
**Attorney for** Defendants

(Civ. 660) 7/95

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

ELWOOD F. MENEAR and
MARJORIE MENEAR, h/w

**CIVIL ACTION**

vs.

**NO.**

U.S. AIRWAYS, INC.  and
TINA PERRY

### NOTICE OF REMOVAL

Defendants US Airways, Inc. ("US Airways"), incorrectly sued as "US Airways", and

Tina Perry, by their attorneys Blank Rome LLP, hereby file their Notice of Removal

pursuant to 28 U.S.C. Sections 1331 and 1441 et seq., and in support thereof, aver as

follows:

1.      Plaintiffs Elwood Menear and Marjorie Menear have commenced a lawsuit by

Complaint in the Philadelphia County Court of Common Pleas as of April Term 2003,

No. 002426, seeking damages in connection with various negligent and intentional tortious

acts alleged.  A true and correct copy of said Complaint is attached as Exhibit 1.

2.      This action arises out of an airline/airport safety and security incident on

January 13, 2002, at the Terminal B security checkpoint at Philadelphia International Airport.

The incident grows out of a dispute over pilot screening and security procedures between

plaintiff Elwood Menear's union, the Air Line Pilots Association ("ALPA") and US Airways,

Inc.  Plaintiffs allege in their Complaint that plaintiff Elwood Menear was a line Captain

employed by defendant US Airways, Inc. at the time of this incident, and defendant Tina Perry was the US Airways Ground Security Coordinator at Terminal B on the date in question. Exhibit A, Complaint, para. 5, 13. Plaintiffs allege that the metal detector alarm sounded as Captain Menear proceeded through the security checkpoint, as a result of which he was subject to further security scrutiny. Plaintiffs acknowledged in their Complaint that security procedures were the subject of an ongoing objection by ALPA which was being negotiated by ALPA with US Airways, Inc. Exhibit A, Complaint, para. 10, 11. By his own admission, Captain Menear proceeded to repeat several times at the checkpoint that "he could take down the airplane in his underwear" if he wanted to. Exhibit A, Complaint, para. 15-16, 20, 30(a), 30 (i). As a result, Captain Menear was ultimately arrested by the Philadelphia police, with criminal charges brought and tried by the District Attorney's office. Exhibit A, Complaint, para. 28-29. He was also held out of flight service for a time. Exhibit A, Complaint, para. 32. Captain Menear and his wife Marjorie Menear have now sued US Airways and Tina Perry for various state law-based torts. .

3.     Defendant US Airways, Inc. is a common carrier providing transportation by aircraft for hire subject to regulations by the Federal Aviation Act as amended by the Airline Deregulation Act and applicable federal regulations governing air safety and security. Defendant US Airways, Inc. is also a carrier within the meaning of Section One, First and Section 201 of the Railway Labor Act, 45 U.S.C. §151, First and §181.

2

4.     Defendant US Airways is also the employer of plaintiff Elwood F. Menear, who is a federally licensed airline pilot (Exhibit A, Complaint, para. 5) who is represented for purposes of collective bargaining with US Airways, Inc. by ALPA.

5.     Based upon the allegations in Plaintiffs' Complaint, the acts in question (a) "arise under federal law" because the claims in question necessarily turn on and are preempted by federal law, including the Federal Aviation Act of 1958 as amended by the Airline Deregulation Act [49 U.S.C. §40101 *et seq.* – see <u>Abdullah v. American Airlines, Inc.</u>, 181 F.3d 363 (3d Cir. 1999)] and (b) grow out of a "minor dispute" between ALPA and US Airways, Inc. and are preempted by the Railway Labor Act, 45 U.S.C. §151 *et seq.*

6.     Accordingly, plaintiffs' claims  are within this Court's federal question jurisdiction, in that they arise "under the Constitution, laws, or treaties of the United States". <u>See</u> 28 U.S.C. § 1331.

7.     For federal question jurisdiction, there is no minimum monetary amount in controversy requirement.

8.     Defendants US Airways and Tina Perry were served with the Complaint by mail dated July 29, 2003, a date less than 30 days prior to the filing of the instant Notice of Removal.

9.     Defendants seek the removal of this case from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. Sections 1331 and 1441 <u>et seq.</u>, inasmuch as Plaintiffs'

3

claims arise under federal law, are within this Court's federal question jurisdiction, and this

Notice has been filed within 30 days of the service of the Complaint upon Defendants.

**BLANK ROME LLP**

By:  _David Zeebandelaar_

David N. Zeebandelaar, Esquire
Identification No. 31923
Elaine D. Solomon, Esquire
Identification No. 56219
One Logan Square
Philadelphia, PA 19103
(215) 569-5448
**Attorneys for Defendants**
**US Airways, Inc. and Tina Perry**

4

## CERTIFICATE OF SERVICE

David N. Zeehandelaar hereby certifies that a true and correct copy of the foregoing Notice of Removal was mailed this 18th day of August  2003, by U.S. First-Class mail, postage prepaid, to counsel of record as noted below:

James K. Brengle, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA  19103

David N. Zeehandelaar

**DUANE MORRIS LLP**
By:    James K. Brengle, Esquire    Attorneys for Plaintiffs
Identification No. 23191
One Liberty Place
Philadelphia, PA  19103
(215) 979-1512

---

| | |
|---|---|
| ELWOOD F. MENEAR and MARJORIE MENEAR, h/w | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| Plaintiffs, | APRIL TERM, 2003 |
| v. | NO. 002426 |
| U.S. AIRWAYS, INC. | |
| and | |
| TINA PERRY | JURY TRIAL DEMANDED |
| Defendants. | |

---

## NOTICE

    You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA  19107
Telephone:  (215) 238-1701

## AVISO

    Le han demandado a usted en corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo a partir de la fecha de la demanda y la notificación. Necesita hacer una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Ademas, la corte puede decidir a favor del demandante y requerir que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE PARA PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
One Reading Center
Filadelfia, PA  19107
Telefono: (215) 238-1701

**THIS IS NOT AN ARBITRATION CASE**

**AN ASSESSMENT OF DAMAGES HEARING IS REQUIRED**

**DUANE MORRIS LLP**
By:    James K. Brengle, Esquire        Attorneys for Plaintiffs
Identification No. 23191
One Liberty Place
Philadelphia, PA  19103
(215) 979-1512
(215) 979-1020 (fax)
(601) 331-1008 (cell)

| | |
|---|---|
| ELWOOD F. MENEAR and MARJORIE MENEAR, h/w<br>10350 Jonestown Road<br>Annville, PA  17003 | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY |
|                Plaintiffs, | APRIL TERM, 2003 |
| v. | NO. 002426 |
| U.S. AIRWAYS, INC.<br>c/o CT Corporation<br>1515 Market Street<br>Philadelphia, PA  19103 | |
| and | |
| TINA PERRY<br>919 12th Avenue, Apt. 2A<br>Prospect Park, PA  19076 | JURY TRIAL DEMANDED |
|           Defendants. | |

**CIVIL ACTION - COMPLAINT**
(2E – Wrongful Use of Process, 2L – Libel and Slander,
& 2O Other Personal Injury)

1.     Plaintiff, Elwood Menear ("Menear"), is a citizen of the Commonwealth of Pennsylvania, residing at the above address in Annville, Pennsylvania.  At all times relevant hereto, he was married to plaintiff, Marjorie Menear, who resides at the same address.

2.     Defendant, US Airways, Inc. ("USAI"), is a corporation organized under the laws of the State of Delaware, with a principal place of business located at Crystal Park Four, 2345 Crystal Drive, Arlington, Virginia 22227, and at all times material herein was the employer of plaintiff, Elwood Menear, and co-defendant, Tina Perry.

3.     Defendant, USAI, is engaged in the business of transporting passengers, property and mail as a certificated air carrier within the meaning of Section 40102 of Title 49, US Code, and at all times material herein operated a major connecting hub at Philadelphia International Airport, Pennsylvania.

4.     Defendant, Tina Perry ("Perry"), at all times material herein,  is and was a citizen of the Commonwealth of Pennsylvania, and an employee of US Airways, Inc., residing at the address listed in the caption.  She works for USAI at the Philadelphia International Airport in various job descriptions, including Ground Security Coordinator ("GSC").

5.     Plaintiff Menear was and is a federally licensed airplane pilot, serving as a line captain for USAI, based out of Philadelphia International Airport.

6.     Since approximately the 1960s, the Philadelphia International Airport, and a number of other state and federal agencies, have implemented various and sundry security measures designed originally to meet a threat of aircraft hijackings to certain Caribbean countries, including but not limited to Cuba.  Since the events of September 11, 2001, the airport tightened its security, to require metal-detector screening of everyone desiring to enter certain terminal areas of Philadelphia International Airport.

7.     The screening process referred to above included employees of the airlines themselves, including its pilots, one of whom is plaintiff Menear, herein.

8.     Menear, as an employee of USAI, who carries with him a number of identification cards and badges, and other documents to identify himself.

9.     Prior to receiving these identifying documents, Menear was required to undergo vigorous testing, examination, and other checks to certify him to pilot large civil aircraft.

10.    Prior to January 13, 2002, the Airline Pilots' Association ("ALPA"), as the authorized collective bargaining agent for the pilots employed by USAI, had lodged certain objections to USAI concerning the need of heightened screening and security checks of pilots.

11.    Prior to January 13, 2002, USAI was aware of pilot concerns over the need for this heightened screening process, as it applied to them, and had been involved in discussions and negotiating processes with the pilots regarding these concerns.

12.    On January 13, 2002, at approximately 7:00 a.m., Menear was on the premises of his employer, and proceeding through the screening process at Terminal B of the Philadelphia International Airport.

13.    At that time, co-defendant, Tina Perry, was serving as a GSC at Terminal B, as a representative of USAI.

14.    At all times material, Ms. Perry's work in Terminal B was pursuant to the advice, instructions, and on behalf of her employer, USAI.

15.    On the morning of January 13, 2002, as Menear proceeded through the metal detector, various metallic objects, including those which were part of his uniform, caused the metal detector alarms to sound.

16.     As a consequence of the sounding of these alarms, Menear was advised by security personnel present that he needed to submit to a closer body search.  At the point in time Menear was advised by his screener to submit to a body search, co-defendant, Tina Perry, was not in the immediate vicinity of this screener or Menear, but instead was approximately 50 to 60 feet away at or near another screening/passenger entry location that had nothing to do with the specific screening location where Captain Menear was proceeding through security.

17.     From her location, some 50 or 60 feet away, defendant Perry observed Captain Menear to set down his bags forcefully, as he prepared to undergo personal body screening.  For reasons known only to her, Ms. Perry then decided to proceed across the concourse area to confront Captain Menear  because she "needed to say something" to him.  When she neared Menear, she confronted him with the question "is there a problem?" Then, and only then, did Captain Menear say anything at all to Ms. Perry, or anyone else.

18.     Upon her request,  Menear showed her his identification card, all the while being aware of the fact that the ultimate goal of the screening process was not to harass the very pilots who would fly the airplane, but instead, those who would attempt to overpower the pilots and seize the aircraft from him.

19.     Tina Perry, USAI, and Captain Menear were mindful of the fact that Menear's fellow pilots and he did not have to brandish any actual or makeshift weapon, such as finger nail clippers with a one-inch nail files, tweezers, or a pole axe, in order to obtain entry into the cockpit of the aircraft and to assume a position to operate its controls.  Indeed, Ms. Perry and USAI knew that Captain Menear, like every other pilot for U.S. Airways, could not even function as an employee of the company was it not to allow him to sit in the pilot's seat and

manipulate the flight controls of the aircraft—the identical activity being conducted by the hijackers of 911.

20.     Thus, in response to Ms. Perry's inquiry of Menear as to whether he had a problem removing his clothing in search of the elusive finger nail clippers or company emblem that may have tripped the alarm, the Captain reminded Ms. Perry of these truths, stating also that the pilots undergo an exhaustive screening process and other checks to obtain official clearance to enter the airport by displaying their official identification badges, containing their pictures, and therefore rendering it unnecessary to confiscate their nail files. He also told her that the purpose of the screening process was not to harass pilots, but to keep the pilots safe from others who would harass them. In so advising her, he noted that, as the pilot at the controls of the aircraft, he had the ability to take the plane down even if he were wearing only underwear.

21.     It is not the duty or place of a GSC, acting in that official capacity, to confront pilots in the manner done by Ms Perry on the morning of January 13, 2002.

22.     The above hyperbole, uttered by Captain Menear in response to the invitation of Ms. Perry's illegitimate question "Have you got a problem" was not by any stretch of the imagination a terroristic threat, and Perry knew it. Therefore, Captain Menear responded in kind—in a manner to emphasize a point, hypothetical in nature, and which could not be misconstrued by a reasonable person in the same or similar situation into which Ms. Perry had gratuitously and unreasonably thrust herself on the morning of January 13, 2002.

23.     It is further averred, and emphasized, that the specific response by Captain Menear was conditional and hypothetical in its content, and was clearly understood by Ms. Perry in that context, given the time, place, and circumstances in which it was uttered.

24.     As the above-referenced interrogation and conversation continued, an FAA representative, Jill Dempsey, as well as a Philadelphia Police Officer, Sergeant Shippert, and another police officer, Officer Jones, arrived at the scene.

25.     At approximately this same time, Tina Perry excused herself to make a phone call to a co-employee, Ms. Cheryl Roycroft, who was serving as a ramp supervisor in the ramp tower at that time.

26.     At all times relevant hereto, no crimes were committed in the presence of the police officers or Ms. Perry.

27.     Nonetheless, Ms. Perry procured the arrest of Captain Menear for the purpose of effecting his forcible removal from the scene, for reasons that had nothing to do with any supposed belief that he was really a terrorist or was behaving in a criminally disorderly manner such as to warrant an arrest and the eventual preferring of criminal charges, or otherwise.

28.     On January 13, 2002, Captain Menear was arrested for making terroristic threats and for disorderly conduct, in violation of the criminal statutes of the Commonwealth of Pennsylvania.

29.     A public trial before the Honorable James DeLeon, was held on June 6, 2002, following which, Captain Menear was acquitted of all of the criminal charges levied by Ms. Perry and USAI, pending against him.

30.     The arrest of Captain Menear was without probable cause in that:

(a)     Ms. Perry and the airport screeners permitted Captain Menear to continue the screening process even after he made the statement that he could take the airplane down in his underwear if he wanted to;

(b)     The statement was hypothetical and conditional, and did not imply an immediate threat, and everybody present knew it;

(c)     Her testimony at the criminal trial on this issue established that her understandings and actions were unreasonable as a matter of fact and law as her primary problem with Captain Menear's conduct that day was that it was unbecoming an employee of USAI—not that it was a terroristic threat;

(d)     The disorderly conduct charge, likewise, was without any foundation whatsoever, as no evidence of any disorderly conduct, criminal or otherwise, was presented at the trial, or shown on the videotape of the screening process of Captain Menear on the morning of January 13, 2002;

(e)     The motive of Ms. Perry was consistent with her prior conduct and misconduct as a GSC in the screening areas of USAI in that she considered herself to be a person of sufficient power and authority to abuse others and have them arrested if she wanted to;

(f)     Notwithstanding the claim of disorderly conduct, there was no disruption of services at the screening tables or magnetometer, and persons in the vicinity paid little, if any, attention at all to the interaction of Ms. Perry and Captain Menear, which was in the form of conversation only;

(g)     None of the police officers standing nearby saw or heard a commotion of any kind, and never witnessed any criminal conduct, let alone conduct that gave them probable cause to arrest Menear;

(h)     The police officers in the vicinity observed Ms. Perry to be talking to the defendant, but could not hear the gist of the conversation;

(i)   Ms. Perry stated to Captain Menear "are you making a threat in reference to what you said?" To which he replied "no, I just stated that I could bring the plane down in my underwear, I don't need weapons to bring the plane down;"

(j)   The police officer observed Captain Menear only to be annoyed, but not disorderly;

(k)   Although these conversations occurred in the middle of the checkpoint, which was active, passengers continued going back and forth through the checkpoint throughout the entire time and no one registered any fright, despair, or reticence to proceed based on Captain Menear's words or his behavior;

(l)   The police officers on scene described Captain Menear's statement as being only "inappropriate," and telling him only that he was not setting a good example—hardly the expected response of a Philadelphia police officer confronting a terrorist;

(m)   The police officers noted further at the scene that Captain Menear was angry with the fact that every time he comes through the checkpoint he always sets it off, and that he was "tired of coming here and setting off the magnetometer;"

(n)   Notwithstanding the foregoing, the police were instructed to place Captain Menear under arrest by Ms. Perry, who turned around to call for the law enforcement officers.

31.   At the trial of this matter before Judge DeLeon, Officer Jones admitted that no crime had been committed in his presence, and that he was told to place Captain Menear under arrest by Sergeant Shippert, only after a meeting with Sergeant Shippert, Tina Perry, and Jill Dempsey, an FAA employee who did not witness any of the original confrontation with Captain Menear by Tina Perry.

32.     Even after his arrest and prior to his public trial on the criminal charge of making terroristic threats, defendant, USAI, authorized Menear to commence normal, cyclical training, as provided to all airline pilots, in the nature of re-honing his pilot skills, in contemplation of allowing Captain Menear to continue to fly company aircraft, entrusting him on a daily basis with the lives of thousands of members of the traveling public. They did so, because they knew he was no terrorist.

33.     Notwithstanding the above, USAI never sought to drop the charges it had against Captain Menear, even though they knew or should have known the charges, and the continued legal pursuit of a conviction of Captain Menear were baseless.

## COUNT I

### Plaintiffs v. Tina Perry – Negligence

34.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 33 above, and reassert them with the same force and effect as though fully set forth herein.

35.     At all times material, a duty existed on the part of Tina Perry in the given situation described in the numbered paragraphs above predicated on her relationship as a co-employee of Captain Menear and her job as a GSC, to exercise reasonable care in the performance of her duties so as not to subject individuals, including Captain Menear, to an unreasonable risk of harm by reason of her actions.

36.     Ms. Perry breached her duty to act with reasonable care toward Captain Menear when she failed to understand or appreciate the fact that Captain Menear was not making a terroristic threat of any kind, or was not acting in a disorderly manner at any time on the morning of January 13, 2002.

37.     Ms. Perry was further negligent in confusing the scope or breadth of her authority as a GSC, when she knew or should have known the company policies, procedures, description of duties, statutes and regulations pertaining to the scope of duties, actions, and authority granted a GSC did not include the right or power to scold or discipline a co-employee, or have a pilot arrested.

38.     By reason of the negligence of Ms. Perry as stated above, Captain Menear was caused to sustain damages, as more fully described below.

39.     As a  direct result of the negligence of Tina Perry as aforesaid, plaintiffs have suffered substantial losses and injuries, including but not limited to the financial burden and cost of defending successfully a criminal trial, loss of liberty, loss of time, harm to his reputation, physical discomfort, business interruption, mental anguish, humiliation, injuries to feelings, embarrassment, and distress in a very public and demeaning way.

40.     As a further direct result of the negligence of Tina Perry, plaintiffs have been caused to sell at distressed prices, various assets that they owned in order to pay the attorneys' fees that were generated in the successful defense of Captain Menear's criminal trial.

## COUNT II

### Plaintiffs v. Tina Perry – Malicious Prosecution

41.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 40 above, and reassert them with the same force and effect as though fully set forth herein.

42.     On January 13, 2002, defendant, Tina Perry, initiated and procured the institution of criminal proceedings against plaintiff, Captain Menear, for terroristic threats, a misdemeanor of the first degree, under 18 Pa. C.S. § 2706.

43.     On the aforesaid date, defendant, Tina Perry, also initiated and/or procured the institution of criminal proceedings against Captain Menear for disorderly conduct, a summary offense, under 18 Pa. C.S. § 5503.

44.     The actions of Tina Perry in procuring the institution of criminal proceedings against Captain Menear, as stated above, were without probable cause, and were made primarily for a purpose other than the bringing of an offender to justice.

45.     The criminal proceedings initiated and/or procured by Tina Perry terminated in favor of Captain Menear by reason of the acquittal of Captain Menear on all charges.

46.     By reason of the malicious prosecution of Captain Menear, initiated and/or procured by Tina Perry, plaintiffs were caused to incur special injuries, including injuries or interference with the person, property, or reputation of plaintiffs and each of them, including but not limited to the following:

(a)     loss of income of approximately--$48,718.00;

(b)     legal fees in the defense of the criminal charges-- $22,850;

(c)     travel to lawyers and courts to fight the criminal charges approximately-- $10,000;

(d)     loss of benefits and vacation time-- $10,000;

(e)     sale of personal property and other assets at distressed prices-- $60,000.

47.     In addition to the special damages listed above, plaintiffs were also caused personal injuries in the form of loss of liberty and time, harm to reputation, physical discomfort, interruption of business, mental anguish, humiliation, and injury to feelings, arising out of the following conduct:

      (a)     being arrested without any warning in public, and in front of numerous people in an international airport;

      (b)     being charged on two criminal counts which plaintiffs knew at all times were unjust;

      (c)     being charged on two criminal counts by his employer, who knew they were unjust;

      (d)     proceeding through the criminal process, even though he had attempted to talk sense in his employer to drop these ridiculous charges;

      (e)     being led away in handcuffs, and having to submit to the indignities of removal of his belt, shoe laces, and other clothing;

      (f)     being incarcerated for a period of over twenty hours, during which he was denied amenities and privacy in the conduct of personal hygiene and other things;

      (g)     having to proceed to a public criminal trial to defend himself when he knew he had committed no crime;

      (h)     experiencing the above, knowing all the while that he had never been arrested before, had never had any criminal charges against him;

      (i)     experiencing the aforesaid, knowing that he was charged negligently and/or irresponsibly and/or intentionally and/or without probable cause by one of his own co-employees as well as his employer;

      (j)     experiencing the aforesaid, knowing all the while he was entirely innocent and helpless to oppose the injustices being heaped upon him;

      (k)     being booked, photographed, and fingerprinted like a common criminal;

(l)      living with this injustice up to and including the time of his criminal trial for a period of approximately five months;

(m)      suddenly finding himself a matter of public ridicule and humor, being obliged to explain to his neighbors, friends, other co-employees, and strangers that he really had not committed the crimes alleged against him (there were over 70 references to his arrest on the internet);

(n)      continuing to have to explain his innocence even after his acquittal;

(o)      experiencing the scorn of individuals, including screeners at other airports, even after his acquittal, and others who believe that even though he was acquitted, the fact that he was arrested meant he must have done something wrong;

(p)      and other specific injuries of the same nature suffered by an honest, sensitive man, who had experienced an unjust accusation, and the shame of being subjected to the criminal process, all because a co-employee with the advice, consent, encouragement, and/or instructions and/or acquiescence of their common employer negligently allowed this charade to continue through a criminal trial, rather than to drop the charges.

## COUNT III

### Plaintiffs v. Tina Perry – Negligent Misrepresentation

48.      Plaintiffs incorporate by reference the averments of paragraphs 1 through 47 above, and reassert them with the same force and effect as though fully set forth herein.

49.      At all times material, the acts or omissions described above, were committed by defendant, Tina Perry, within the course and scope of her employment, and on behalf of her employer.

50.     By telling the police officers to arrest Captain Menear when she knew or should have known that his statements and conduct that morning did not rise to the level of terroristic threats, she negligently misrepresented a material fact to these police officers.

51.     Tina Perry's statements concerning her opinion as to the making of alleged terroristic threats and disorderly conduct were unreasonable and unfounded, and made without a knowledge or understanding of the consequence of her statements.

52.     The statements made by Ms. Perry were made under circumstances in which she knew or should have known or ought to have known were false.

53.     Statements made by defendant Perry to induce the arrest of Captain Menear concerned a material fact, to wit, the making of a terroristic threat and committing disorderly conduct were crimes the elements of which she neither understood, knew, and for which she failed to make a reasonable investigation of the truth of her allegations with company employees or otherwise prior to instructing the officers to arrest Captain Menear.

54.     As a consequence of Tina Perry's negligence, as stated above, Captain Menear suffered extreme humiliation, embarrassment, and mental anguish, as well as other damages as more fully described in the preceding paragraphs, above.

## COUNT IV

### Plaintiffs v. Tina Perry – False Arrest

55.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 54 above, and reassert them with the same force and effect as though fully set forth herein.

56.     The conduct described above constituted a false arrest under Pennsylvania law on the grounds that the arrest was made without probable cause and intentionally procured by Perry, a person who lacked legal privilege to compel the arrest.

57.     In addition to the above, Perry did not provide the police officers in this case with information to establish probable cause to believe that Captain Menear had committed an offense, and they, themselves, did not witness any misconduct on the part of Captain Menear constituting any crime, including the offense of making of terroristic threats or disorderly conduct. Were it not for the false representations and of Ms. Perry to these police officers, and her misconduct in dealing with Menear that morning this arrest would not have occurred.

58.     Following the false arrest of Captain Menear, he was booked, fingerprinted, photographed, arraigned, and tried on the criminal charges preferred by, and/or, at the behest of Perry and USAI. A verdict or disposition favorable to Captain Menear was returned in the form of an acquittal of Captain Menear on all charges.

59.     As a consequence of the false arrest Plaintiffs suffered damages as more fully stated elsewhere in this Complaint.

## COUNT V

### Plaintiffs v. Tina Perry - False Imprisonment

60.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 59 above, and reassert them with the same force and effect as though fully set forth herein.

61.     The conduct of Perry, as described above was intentional, purposeful, designed to, and did result in the false imprisonment of Menear on false charges, in that:

(a)     she instructed the police to arrest Menear;

(b)     she instructed the police to arrest Menear with the intention or the sure knowledge they would confine him to a place or area not of his choosing, with fixed boundaries;

(c)     she acted intending to confine Menear within boundaries fixed by her, rather than to allow him free movement about the terminal;

(d)     her actions directly or indirectly resulted in such a confinement of Menear;

and

(e)     Menear was conscious of the confinement and harmed by it.

62.     As a consequence of the false imprisonment of Menear, plaintiffs suffered the damages described in paragraph 47, above, incorporated by reference herein.

## COUNT VI

### Plaintiffs v. USAI - Vicarious Liability

63.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 62, above, and reassert them with the same force and effect as though fully set forth herein.

64.     At all times material, Tina Perry was the agent, servant, workman and/or employee of co-defendant, USAI, acting in the course and scope of her employment and on behalf of her employer, and in furtherance of her employer's business.

65.     The actions of Perry on the morning of January 13, 2002 occurred within the authorized time, space, and location of her employment with USAI and were of a kind and nature that USAI employed her to perform.

66.     Furthermore, the actions of Perry were actuated by a purpose to serve her master, USAI.

67.     Finally, the use of force by Perry, intentionally and/or negligently, to effectuate Menear's false arrest, false imprisonment, and malicious prosecution was not unexpected by USAI, in that they knew she had done it before, they never admonished her not to do it again, they encouraged/acquiesced in it on every occasion that it occurred, and they continued to support her actions and conduct through the conclusion of the trial, even to this day.

68.     On the basis of the facts averred above, a master-servant relationship existed between Tina Perry and USAI, making USAI vicariously liable for damages sustained by Captain Menear for the acts or omissions committed by Tina Perry, as stated above.

## COUNT VII

### Plaintiffs v. USAI – Negligent Retention/Supervision of Employees

69.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 68 above, and reassert them with the same force and effect as though fully set forth herein.

70.     Defendant, USAI, assigned Tina Perry to the position of GSC at Terminal B when it knew or should have known that she was untrained, unsuitable, careless, incompetent and/or lacked the leadership, temperamental and interpersonal skills necessary to perform the duties of a GSC without creating an unreasonable risk of harm to others;

71.     By reason of the foregoing, USAI knew or should have known that Perry could not perform the duties of a GSC, or otherwise, at Terminal B, without creating an unreasonable risk of harm to individuals, including plaintiffs herein.

72.     USAI also knew or should have known that co-defendant, Perry, had been granted no legal authority or privilege by the company or law enforcement authorities to cause the arrest of a co-employee, and had no authority to insinuate herself into the screening process, which was performed by persons/entities other than those employed by USAI.

73.     Still further, USAI was negligent in failing to adequately educate, train, and/or supervise co-defendant Perry so as to establish her confidence and proper understanding as to the nature, extent, and scope of her authorized duties, when they knew or should have known that said lack of education, training, and/or supervision, and or necessary temperament and

interpersonal skills would create an unreasonable risk of harm the same or similar to that which was visited upon Captain Menear on January 13, 2002.

74.     The carelessness and incompetence of Tina Perry, as manifested on the day of this incident, was included but not was not limited to the following:

(a)     she either acted beyond her given authority, or in the alternative, negligently was given the authority as a GSC to admonish pilots on their behavior;

(b)     she did not know how to differentiate between activities which would constitute the making of terroristic threats and/or disorderly conduct on the one hand, and conduct which she believed was simply unbecoming an employee of U.S. Airways, on the other;

(c)     there was no evidence whatsoever that Captain Menear would have said anything at all on the morning of this incident had Tina Perry not come up to him and confronted him.  It was only by reason of her provocative questioning of Captain Menear ("have you got a problem?") that Captain Menear felt compelled to comment on the inappropriateness of screening pilots for weapons at all;

(d)     the actual security screeners on duty at the location Menear passed through the metal detector on January 13, 2002 had no cause to, and never did, confront Menear or complain to Menear or anybody else at any time with respect to any of the actions of Menear at Terminal B that morning, including those actions that caught the attention of Perry, causing her to insinuate herself gratuitously into the screening process in the first place;

(e)     USAI knew from a prior arrest procured by Tina Perry that she was exacerbating situations occurring at the screening tables with USAI co-workers, turning them into serious situations that would and did lead to arrests of individuals

(f)      USAI also knew, by reason of the premises, that Perry was arrogating under herself the authority to cause the arrest of co-employees, when no such written authority or guidance was provided in any company directive applicable to employees serving as Ground Security Coordinators.

75.      USAI did not provide Tina Perry or any other GSC with  guidelines or instructions, written or otherwise, circumscribing and/or limiting the scope of her power and authority.

76.      Neither the activities of a Ground Security Coordinator, as of January, 2002, under local, state, or federal regulations, or the guidelines and instructions of U.S. Airways, Inc., itself, gave to Perry the authority to confront or take any actions at all against a pilot for U.S. Airways, Inc. as was done by Perry on the morning of January 13, 2002, or otherwise.

77.      By reason of the foregoing, USAI failed to prevent negligent or tortious conduct by defendant, Tina Perry, by failing to provide her with the education, training, supervision and guidance in the proper handling of incidents such as the one that occurred on the morning of January 13, 2002.

78.      By reason of the failure of USAI to properly select, control, and/or supervise its employee, Tina Perry, as aforesaid, USAI failed in its duty to exercise reasonable care in the selection supervision and control of Tina Perry in violation of *Restatement (2d) of Agency* § 213 in that it failed to give proper or unambiguous orders to Perry on the performance of her job, or to provide her with proper regulations to follow; or in the alternative in the employment of a person who lacked the education, demeanor,  temperament, or inter-personal skills required to perform this job without creating an unreasonable risk of harm to others; or in the alternative, in

permitting or failing to prevent negligent or other tortious conduct by Perry upon the premises that was under the control of USAI.

79.     Still further, following the arrest of Captain Menear, USAI failed to investigate, and failed to denounce the exercise of authority by defendant, Tina Perry, and proceeded with the malicious prosecution of Captain Menear, as more fully stated below, thus ratifying the tortious conduct of Tina Perry and making such conduct its own in violation of *Restatement (2d) of Agency* § 218.

80.     By reason of the foregoing, plaintiffs were caused to sustain damages as stated aforesaid.

## COUNT VIII

### Plaintiffs v. USAI - Negligent Hiring and Supervision

81.     Plaintiffs incorporate by reference paragraphs 1 through 80, above, and reassert them with the same force and effect as though fully set forth herein.

82.     At all times material, Perry was on the premises in possession and/or under the control of USAI upon which Perry was privileged to enter only as USAI's servant.

83.     At all times material, USAI knew or had reason to know that it had the ability to control its servant, Perry, and knew or should have known of the necessity and opportunity for exercising such control.

84.     USAI, as the employer of individuals to serve as GSCs at Terminal B, and elsewhere, had a duty to exercise reasonable care so to control said employees even while acting outside the course and scope of their employment as to prevent them from intentionally harming others.

85.     USAI failed in its duties, as outlined above, rendering it liable for the negligent hiring and supervision of Perry under *Restatement (Second) of Torts § 317.*

86.     By reason of its negligence as above-stated, Plaintiffs suffered, *inter alia*, the damages alleged in paragraph 47, above

## COUNT IX

### Plaintiffs v. USAI – Malicious Prosecution

87.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 86 above, and reassert them with the same force and effect as though fully set forth herein.

88.     By reason of the activities of co-defendant, Tina Perry, as stated in the above paragraphs of the Complaint, defendant, USAI, initiated and/or procured the arrest, imprisonment, and institution of criminal proceedings against Captain Menear, who was not guilty of the offenses charged.

89.     By reason of defendant, USAI's actions in maintaining through the time and conduct of trial the prosecution of Captain Menear, without probable cause and primarily for a purpose other than to bring to justice an offender/individual who had allegedly committed the crimes of making terroristic threats and disorderly conduct, USAI is liable for the malicious prosecution of Captain Menear and all of the damages which reasonably flow from it, including but not limited to the following:

(a)     the cost of defending his criminal trial;

(b)     attorneys' fees incurred in defense of the criminal trial;

(c)     his loss of liberty;

(d)     his loss of time;

(e)     the harm to his reputation;

(f)      the physical discomfort which he experienced;

(g)      his business interruption;

(h)      his mental anguish;

(i)      the humiliation he experienced;

(j)      the injury to his feelings;

(k)      the injuries of a like nature to his wife, which were reasonably

foreseeable;

(l)      all other damages referred to more specifically in the paragraphs

incorporated by reference above, incorporated by reference herein.

## COUNT X

### Plaintiffs v. USAI – False Arrest

90.      Plaintiffs incorporate by reference the averments of paragraphs 1 through 89

above, and reassert them with the same force and effect as though fully set forth herein.

91.      On the morning of this incident, Tina Perry communicated with co-employees of

U.S. Airways prior to the moment of Captain Menear's arrest, concerning her various

interactions with Captain Menear at Terminal B.

92.      As of January 13, 2002, and a long time prior to that date, the job position and

title, believed to be head of corporate security, was vacant at U.S. Airways, leaving no one in

direct charge or supervision over GSCs, and more particularly, Perry..

93.      Co-defendant, U.S. Airways, by and through the unauthorized actions of Perry

and other employees, took part in the decision to arrest Captain Menear, and is therefore liable

for his false arrest, and the damages sustained thereby, as more fully stated above.

94.     The conduct of USAI directly or indirectly resulted in the false arrest of Menear, as more fully described in the paragraphs of COUNT IV, above.

**COUNT XI**

**Plaintiffs v. USAI – False Imprisonment**

95.     Plaintiffs incorporate by reference the averments of paragraphs 1 through 94 above, and reassert them with the same force and effect as though fully set forth herein, substituting the name of USAI for the name of, and references to, Perry, especially drawing reference to the averments of paragraphs 61, 62, and 91 through 94.

96.     USAI's actions, as aforesaid,  in procuring the unlawful and false arrest of Captain Menear were done intentionally, with the knowledge that he would be confined by local policy authorities not of his choosing, and fixed by U.S. Airways.

97.     The actions taken by U.S. Airways, as cited above, directly and/or indirectly resulted in such confinement of Captain Menear.

98.     The imprisonment of Captain Menear was for alleged crimes which he did not commit, and which defendant actually knew, and/or in the exercise of common sense knew or should have known he did not commit.

99.     By reason of the false imprisonment of Captain Menear, he sustained all of the damages referred to above, in an amount in excess of $50,000, which damages are continuing to this day.

## COUNT XII

### Plaintiff, Marjorie Menear v. Defendants

100.    Plaintiff, Marjorie Menear, incorporates by reference the averments of paragraphs 1 through 99, above, and reasserts them with the same force and effect as though fully set fort herein.

101.    Defendants and each of them owed an independent duty to wife plaintiff to exercise due care in that they knew or should have known that the actions taken by them foreseeably would and did create an unreasonable risk of harm to the family members of husband plaintiff, as all family members, especially the spouse, are equally impacted and damaged in the public publicity, the consequent scorn, ridicule, humiliation, embarrassment, damage to reputation, and other fallout of a false arrest that proceeds to a public trial on false charges such as occurred here.

102.    By reason of the actions of defendants, and each of them, defendants knew or should have known that wife plaintiff would experience such an impact, and that it would cause her personal, individual harm in addition to that sustained and suffered by her innocent husband.

103.    By reason of the premises, Plaintiff, Marjorie Menear, continues to experience extreme mental anguish, anxiety, humiliation, ridicule, embarrassment, personal loss of esteem and reputation, and other damages as more fully delineated in paragraph 47, above, all to her personal detriment.

## COUNT XIII

### Plaintiff, Marjorie Menear v. Defendants

104.    Plaintiff incorporates by reference paragraphs 1 through 103, above, and reasserts them with the same force and effect as though fully set forth herein.

105.    Plaintiff has been deprived of the services, society, consortium and companionship of husband plaintiff, and her comfort and happiness in her society has been impaired and continues to be impaired, without abatement, over these past years and months since January 13, 2002.

106.    Plaintiff believes that such losses and impairments as described above will continue, necessarily, into the future.

107.    As a result of the foregoing, plaintiff, Marjorie Menear, has been damaged in an amount in excess of $50,000, which damages are continuing to this day.

WHEREFORE, Plaintiffs, Elwood and Marjorie Menear demand judgment in their favor and against Defendants and each of them in amounts in excess of $50,000.00, each, together with interest, costs and such other and further relief as the court may deem just, proper and equitable in the premises.

DUANE MORRIS LLP

By: _____
James K. Brengle

Dated: July 29, 2003

## **VERIFICATION**

I, Elwood F. Menear, hereby verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge and that these statements are made subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Elwood F. Menear